**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

GENE GILBERT ELLIS III,

        Petitioner,

    vs.                             No. 2:18-CV-00012-JCH-KRS

RAYMOND SMITH, Warden, and
ATTORNEY GENERAL STATE OF
NEW MEXICO,

        Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

On a spring day in 2012, while armed with a knife, Petitioner Gene Gilbert Ellis III entered an apartment without permission and forced a thirteen-year-old girl to engage in multiple nonconsensual sexual acts. After pleading guilty to nine criminal counts relating to these events, Ellis was sentenced to forty-three years in prison and an indeterminate period of supervised parole for a period of at least five years to life.

In the instant habeas corpus petition filed pursuant to 28 U.S.C. § 2254, Ellis alleges that his attorney rendered ineffective assistance as to his sentence, and he contends that several of his counts of conviction amount to double jeopardy or are otherwise constitutionally infirm. (Doc. 1). Respondents have filed an answer to Ellis's petition on the merits. (Doc. 28). On January 8, 2018, the Court referred this case to United States Magistrate Judge Kevin R. Sweazea to conduct any necessary hearings and to recommend an ultimate disposition. (*See* Doc. 3). Having considered the parties' submissions along with the available record, the undersigned RECOMMENDS that Ellis's habeas petition be DENIED.

# I. BACKGROUND

## A. BACKGROUND AND STATE-COURT PROCEEDINGS

On May 23, 2012, Ellis entered an apartment in Artesia, New Mexico without permission. (*See* Ex. BB at 2); (*see also* Ex. B at 1-2).[1] Finding thirteen-year-old M.W. alone in the apartment, Ellis walked up behind her, held a knife to her throat, and then forced her to undress and perform oral sex on him. (*See* Ex. BB at 2). When M.W. refused his subsequent order to go to the bedroom, Ellis held the knife in one hand, punched M.W. with the other, and then dragged her by her hair into the bedroom. (*See id.*). Ellis then held down M.W., climbed on top of her, and proceeded to penetrate her vaginally with his finger, tongue, and penis. (*See id.*). Ellis also placed his mouth on M.W.'s right breast. (*See id.*). When M.W. begged him to stop, Ellis pulled her hair again and directed her to stop talking. (*See id.*). When he finished, Ellis grabbed his knife and told M.W. would kill her, her aunt, and her aunt's infant child (both of whom also lived with M.W.) if she told anyone about these events. (*See id.* at 3). He then threw M.W.'s phone at her and left the apartment. (*See id.*).

An investigation that followed revealed traces of semen and saliva, with DNA that was matched to Ellis. (*See* Ex. BB at 3). Ellis was charged with first-degree kidnapping, four counts of second-degree criminal sexual penetration ("CSP") involving the use of a deadly weapon, one count of second-degree criminal sexual contact of a minor ("CSCM") involving use of a deadly weapon, one count of aggravated burglary involving use of a deadly weapon, one count of aggravated assault with a deadly weapon, and one count of bribery of a witness (threats/false testimony). (Ex. D). A supplemental information was later filed contending that Ellis was a habitual offender under New Mexico law due to a prior felony conviction. (Ex. E).

---

[1] Unless otherwise stated, all exhibits are to Respondents' most recently filed answer (Doc. 28).

Ellis pleaded not guilty at his arraignment in August 2012, and he waived a preliminary hearing. (*See* Ex. LL at 3); (Ex. J at 2). However, at a pre-trial conference three months later, with no plea offer on the table, Ellis changed his plea to guilty on all counts. (*See* Ex. LL at 4); (*see also* Ex. J at 2); (Ex. AA at 6); (Ex. BB at 4); (Ex. BB att. C ¶¶ 7, 12). Ellis now claims that he did so "at the behest of trial counsel," who allegedly told him that he would receive "a sentencing benefit of no more than 15 years" if he accepted responsibility for his crimes. (Doc. 1 at 16). For his part, Ellis's attorney Frank B. Patterson has attested that his office informed Ellis that he was facing 105 years in prison with habitual time and enhancements, but that Ellis stated "that he knew he was guilty and he just wanted to get it over with." (Ex. BB att. C ¶¶ 4, 8). Moreover, according to Patterson, Ellis had sent letters to the victim and the district attorney describing his attack and apologizing for it. (*See id.* ¶ 11). Patterson also attested, and Ellis does not dispute, that Ellis communicated that he wished to change his plea to guilty when the two met at the pretrial conference. (*Id.* ¶ 12). In any event, Ellis pleaded "straight up" guilty at his November 2012 conference, and the state court accepted this plea. (*See, e.g.*, Ex. AA at 6).

Prior to his sentencing hearing on June 20, 2013, Patterson learned—and conveyed to Ellis—that the prosecution "would be requesting a minimum of 45 years" at his sentencing. (*See* Ex. BB att. C ¶¶ 9-10). At that sentencing hearing, the prosecutor did indeed ask for a sentence of at least forty-five years' imprisonment, though she urged imposition of "the maximum sentence" in light of the nature of the offense. (*See, e.g.*, Ex. BB at 4). Patterson raised several arguments against a sentence of forty-five years. (*See, e.g.*, *id.* at 4-5). Ellis himself then testified, admitting that what he had done was "wrong" and "disgusting" and acknowledging that he could not change or take back what he had done. (*See, e.g.*, *id.* at 5). The trial court ultimately

sentenced Ellis to forty-three years' imprisonment with a period of five to twenty years of supervised parole. (*Id.*); (*see also* Ex. A) (original judgment).

Ellis attacked his sentence by noticing an appeal to the New Mexico Court of Appeals. (*See, e.g.*, Exs. F & G). While his appeal was pending, the prosecution filed a notice with the New Mexico Court of Appeals arguing that, under state law, the supervised parole term included in Ellis's judgment should have been for five years to life rather than for five to twenty years. (Ex. I). The New Mexico Court of Appeals subsequently affirmed the trial court's sentence and remanded so that the trial court could "amend the parole portion of the judgment and sentence if necessary." (Ex. K). Although Ellis petitioned the New Mexico Supreme Court for certiorari review of his prison term (Ex. L), the court denied the petition in February 2014 (Ex. M). The trial court subsequently amended Ellis's sentence to include a supervised parole term of five years to life (Ex. B) and denied as untimely Ellis's efforts to withdraw his plea (*see* Exs. R, S).

Ellis filed a petition for writ of habeas corpus with the trial court, arguing *inter alia* that (1) Patterson had provided ineffective assistance by assuring Ellis that he would face a maximum of fifteen years' incarceration and five to twenty years' supervised parole if he pleaded guilty (*see, e.g.*, Ex. AA at 14); (2) his convictions for both aggravated burglary and CSP, and his convictions for separate instances of CSP as well as CSCM, violated the Constitution's protections against double jeopardy (*see, e.g.*, *id.* at 16-21); and (3) his kidnapping conviction must be vacated because any restraint used on M.W. was incidental to the CSP (*see, e.g.*, *id.* at 21-22). The trial court denied habeas relief (Ex. GG), and the state supreme court denied certiorari review (Ex. II).

## B.   Procedural Background

Ellis filed a petition in this Court pursuant to 28 U.S.C. § 2254 on January 4, 2018. (Doc. 1). In his petition, Ellis reasserted the aforementioned claims that he had received ineffective assistance of counsel with respect to his plea and sentencing,[2] that his conviction violated the Double Jeopardy Clause of the Sixth Amendment, and that his kidnapping conviction must be vacated under an incidental-restraint theory. (*See id.* at 16-18). Ellis also asserted another ineffective-assistance claim for the first time. (*See id.* at 16).

Respondents filed an answer focused solely on the argument that Ellis's petition was "mixed" in that it asserted both exhausted and unexhausted claims. (Doc. 11). The undersigned, concluding that the petition was indeed mixed, recommended that the Court dismiss the petition in its entirety unless Ellis voluntarily dismissed the unexhausted claim. (Doc. 17). Ellis subsequently moved to dismiss his unexhausted claim (*see* Doc. 23), and the Court granted that motion while adopting the undersigned's findings and recommendations (*see* Doc. 25).

Respondents subsequently filed an answer responding to the merits of Ellis's claims. (Doc. 28). Although the Court provided Ellis an opportunity to file a reply brief within eighteen days of Respondents' answer (*see* Doc. 25 at 2), Ellis instead belatedly sought an extension of time to file his reply (Doc. 29), and he subsequently sought to withdraw and stay his petition (Doc. 30). On the undersigned's recommendation (*see* Doc. 32), the Court denied Ellis's motion to withdraw and stay his petition but gave him until September 10, 2019 to file a reply to Respondents' answer (Doc. 33). To date, Ellis has filed no reply brief.

---

[2] Each of Ellis's ineffective assistance claims—including his unexhausted claim—are elaborated upon in "Ground One" of his habeas petition. (*See* Doc. 1 at 16). Ellis also appears to restate one of his exhausted ineffective-assistance claims in "Ground Two," stressing the argument that his defense was "clearly prejudiced" by his trial counsel's errors in advising him on his parole exposure. (*See id.* at 16-17). Because these claims address the same substance, the undersigned construes Ground Two to be a restatement of Ground One rather than a separate claim for relief.

## II.  EXHAUSTION AND PROCEDURAL DEFAULT

A habeas petitioner under § 2254 must show that he has exhausted the remedies available in state court. *See* 28 U.S.C. § 2254(b)(1)(A); *see also Bland v. Sirmons*, 459 F.3d 999, 1011 (10th Cir. 2006). To satisfy this requirement, the petitioner must "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). This includes pursuing discretionary review when that review is part of a state's ordinary appellate review process. *Id.*

When a petitioner has failed to exhaust state-court remedies, a federal court generally should dismiss the petition without prejudice to give the petitioner an opportunity to exhaust those remedies. *See Demarest v. Price*, 130 F.3d 922, 939 (10th Cir. 1997). "However, in considering unexhausted claims, federal courts should consider whether, upon dismissal of the claims, the petitioner would then be able to raise them in the state courts." *Id.* "[I]f the court to which Petitioner must present his claims in order to meet the exhaustion requirement would now find those claims procedurally barred, there is a procedural default for the purposes of federal habeas review." *Dulin v. Cook*, 957 F.2d 758, 759 (10th Cir. 1992) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)); *see also Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (considering such claims to be "technically exhausted" but procedurally barred). A federal court will not consider defaulted claims unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750; *Smallwood v. Gibson*, 191 F.3d 1257, 1268 (10th Cir. 1999).

New Mexico courts have recognized

> that [state] postconviction procedures are not a substitute for direct appeal and that [state] statutes do not require collateral review of issues when the facts submitted

> were known or available to the petitioner at the time of his trial. When a defendant should have raised an issue on direct appeal, but failed to do so, he or she may be precluded from raising the issue in habeas corpus proceedings.

*Duncan v. Kerby*, 851 P.2d 466, 468 (N.M. 1993) (internal citations omitted). The Tenth Circuit has held that this rule "is an independent and adequate state procedural ground" barring federal court review. *Scott v. Romero*, 153 F. App'x 495, 497 (10th Cir. 2005) (unpublished) (citing *Jackson v. Shanks*, 143 F.3d 1313, 1318 (10th Cir. 1998)).

Here, and in his state habeas proceeding, Ellis has contended that his kidnapping conviction must be vacated under New Mexico's incidental-restraint limitation on such charges. *See, e.g.*, *State v. Trujillo*, 289 P.3d 238, 250 (N.M. Ct. App. 2012) ("[T]he Legislature did not intend to punish as kidnapping restraints that are merely incidental to another crime."). However, the state court construed the *Duncan* rule as barring this claim since it was not raised in earlier proceedings before the court and was not raised on appeal. (*See* Ex. GG at 2). Neither Ellis's state-court habeas petition, nor his complaint in this action, nor his other filings in either proceeding have presented any substantive argument that the facts underlying this claim were not known or available to him at the time of his trial. Moreover, even though Respondents raised a procedural-bar argument in their answer (*see* Doc. 28 at 13), Ellis did not file a timely reply brief addressing that argument despite being afforded multiple opportunities to do so (*see, e.g.*, Doc. 33). Nothing in Ellis's filings or the record before the undersigned suggests that the limited exceptions to the *Duncan* rule are applicable here. *See, e.g.*, *Duncan*, 851 P.2d at 468 (permitting habeas review notwithstanding failure to raise issues on direct appeal "when fundamental error has occurred . . . or when an adequate record to address the claim properly was not available on direct appeal").[3] Finally, Ellis raises no arguments showing cause and actual prejudice or any

---

[3] In his petition for writ of certiorari to the New Mexico Supreme Court concerning his habeas petition, Ellis suggests in passing that his incidental-restraint argument was "barred from direct appeal due to lack of record." (Ex.

risk of a fundamental miscarriage of justice if his claim is procedurally barred, and the undersigned can ascertain no evidence of such issues from the available record.

Ellis's claim concerning his kidnapping conviction and the incidental-restraint doctrine has been procedurally defaulted. For this reason, federal habeas review of that claim is foreclosed, and the undersigned proceeds to the merits of Ellis's remaining claims.

### III.  LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act ("AEDPA") limits the Court's review of habeas corpus petitions brought under 28 U.S.C. § 2254. Under AEDPA, if the merits of a claim were already adjudicated in state court, federal habeas relief is only available if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1) & (2). These rules present—and are intended to present— "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quotations omitted); *see also Byrd v. Workman*, 645 F.3d 1159, 1172 (10th Cir. 2011) (describing AEDPA standard as imposing "daunting" hurdles in deference to state courts). Because there is a "strong" presumption that a state court adjudicated a claim on the merits when it has previously considered that claim and denied relief, it is only in the "unusual circumstances" where that presumption has been rebutted that the deferential AEDPA standard

---

HH at 7). However, he did not develop that argument any further in that filing. (*See id.* at 7, 9). Nor did Ellis raise any argument of this nature in his original state habeas petition. (*See* Ex. AA 21-22). Likewise, at no point in either his state or federal habeas petition has Ellis pointed to any facts that he claims were purportedly unknown or unavailable to him during his original criminal proceeding. (*Cf., e.g.*, Ex. AA at 4-8); (Doc. 1 at 17-18). The undersigned therefore concludes that Ellis has waived any argument on this point.

will not apply. *See Johnson v. Williams*, 568 U.S. 289, 302 (2013); *see also Harrington v. Richter*, 562 U.S. 86, 99 (2011) (describing presumption of adjudication on the merits).

Under § 2254(d)(1), clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Also included in this standard are "Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context." *House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008) (citing, *e.g.*, *Carey v. Musladin*, 549 U.S. 70 (2006)). The existence of clearly established federal law is a threshold matter for § 2254(d)(1) relief; in its absence, relief must be denied. *See id.* at 1017-18 (citing *Musladin*, 549 U.S. at 77).

A decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Douglas v. Workman*, 560 F.3d 1156, 1170 (10th Cir. 2009) (citation omitted). A state-court decision unreasonably applies federal law if the court applied clearly established federal law in an objectively unreasonable manner. *Williams*, 529 U.S. at 413. "[A]n *unreasonable* application of federal law is different from an *incorrect* or *erroneous* application of federal law." *Id.* at 412. Instead, "a decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard v. Boone*, 468 F.3d 665, 671 (10th Cir. 2006). Even if the state court does not explain its reasoning, the applicant must show that "there was no reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784; *see also Aycox v.*

*Little*, 196 F.3d 1174, 1177 (1999) (clarifying that under AEDPA, "we owe deference to the state court's *result*, even if its reasoning is not expressly stated"). Therefore, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671.

A state court's findings of fact are presumed correct unless rebutted by the petitioner by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). The state court's determination of the facts is unreasonable if the state court plainly misapprehends the record in making its factual findings and the misapprehension goes to a factual issue that is central to the claim. *Wiggins v. Smith*, 539 U.S. 510, 528 (2003); *see also Smith v. Aldridge*, 904 F.3d 874, 880 (10th Cir. 2018) (quoting, *e.g.*, *Brumfield v. Cain*, 576 U.S. 305, 314 (2015)) (requiring petitioner to show that "all '[r]easonable minds reviewing the record' would agree that [the state court's determination of facts] was incorrect" *and* that the adverse decision was "*based on*" that unreasonable determination). This standard is "demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

## IV. HEARING

Federal courts are required to take AEDPA's deferential standards into account when deciding whether to hold an evidentiary hearing. *See Pinholster*, 563 U.S. at 183 (citing *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007)). A federal district court may not conduct "an evidentiary hearing on a habeas claim that [the] petitioner failed to develop in state court." *Young v. Sirmons*, 486 F.3d 655, 679 (10th Cir. 2007) (citing 28 U.S.C. § 2254(e)(2)). However, even where an evidentiary hearing is permissible, the "backward-looking language" of § 2254(d)(1) limits review under that provision to "the record that was before the state court that adjudicated

the claim on the merits," *Pinholster*, 563 U.S. at 180, and the language of § 2254(d)(2) suggests

that the same is true of review under that provision, *see* 28 U.S.C. § 2254(d)(2) (allowing habeas

relief only if the state-court decision "resulted in a decision that was based on an unreasonable

determination of the facts *in light of the evidence presented in the State court proceeding*")

(emphasis added). Thus, "when the state-court record 'precludes habeas relief' under the

limitations of § 2254(d), a district court is 'not required to hold an evidentiary hearing.'"

*Pinholster*, 563 U.S. at 183 (quoting *Schriro*, 550 U.S. at 474).

As will be shown below, assuming that Ellis properly developed the record in state court,

it is evident that this state-court record precludes habeas relief under § 2254(d). Accordingly, an

evidentiary hearing is unnecessary to the resolution of his claims and need not be held.

## V.  DISCUSSION

Ellis's remaining claims involve allegations of ineffective assistance of counsel and of

violations of the Double Jeopardy Clause of the United States Constitution. Having thoroughly

reviewed the record and the parties' submissions, the undersigned concludes that Ellis has failed

to show that the state court's decisions were contrary to, or an unreasonable application of,

clearly established federal law or that the state court's decisions were based on an unreasonable

determination of the facts.

### A.  INEFFECTIVE ASSISTANCE OF COUNSEL

To prove ineffective assistance of counsel, a habeas petition must demonstrate (1) that his

attorney's performance was deficient and (2) that he suffered prejudice as a result. *See Strickland*

*v. Washington*, 466 U.S. 668, 687 (1984). The failure to establish either of these prongs is

sufficient to warrant denial of the petition. *See, e.g.*, *id.* at 697 ("[T]here is no reason for a court

deciding an ineffective assistance claim . . . to address both components of the inquiry if the

defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."); *see also, e.g.*, *United States v. Taylor*, 492 F. App'x 941, 945 (10th Cir. 2012) (unpublished) (finding no need to reach prejudice inquiry where deficiency not established).

When a state inmate "alleges ineffective assistance of counsel, deference exists both in the underlying constitutional test (*Strickland*) and the AEDPA's standard for habeas relief, creating a 'doubly deferential judicial review.'" *Harris v. Sharp*, 941 F.3d 962, 973 (10th Cir. 2019) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Howell v. Trammell*, 728 F.3d 1202, 1223 (10th Cir. 2013) ("The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so."). "Under this double deference, [courts must] consider 'whether there is *any reasonable argument* that counsel satisfied *Strickland*'s deferential standard.'" *Harris*, 941 F.3d at 973 (quoting *Ellis v. Raemisch*, 872 F.3d 1064, 1084 (10th Cir. 2017)). The Court must therefore "begin with a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' and that 'the challenged action might be considered sound trial strategy.'" *Newmiller v. Raemisch*, 877 F.3d 1178, 1196 (10th Cir. 2017) (quoting *Strickland*, 466 U.S. at 689).

In the context of sentencing and pleas, prejudice means the petitioner must show that the outcome of the plea process would have been different, *i.e.*, that he would have received a more favorable sentence but for the deficient performance of his attorney. *See, e.g.*, *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) ("In the context of pleas, a defendant must show the outcome of the plea process would have been different with competent advice."); *Missouri v. Frye*, 566 U.S. 134, 148 (2012) (holding that where plea offer has lapsed or been rejected due to ineffective

assistance, petitioner must show the end result would have been more favorable). Accordingly, a petitioner claiming that deficient counsel led to his guilty plea "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

"[A] petitioner's 'mere allegation' that he would have insisted on trial but for his counsel's errors, although necessary, is ultimately insufficient to entitle him to relief." *Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001) (citing *United States v. Gordon*, 4 F.3d 1567, 1571 (10th Cir.1993)). Rather, courts will look to other factors, including "the factual circumstances surrounding the plea," to determine whether a petitioner would have proceeded to trial. *See id.*; *see also Ayala v. Hatch*, No. 10-cv-1240 MV/LFG, 2011 WL 13279031, at *12 (D.N.M. July 14, 2011) (citing *Miller*, 262 F.3d at 1072) ("In fact, the best evidence of whether a defendant in fact would have changed his plea and demanded a trial may very well be the strength of the state's case, which courts often will review in testing the petitioner's challenge.").

1.   Counsel Regarding Prison Sentence

Because the "factual circumstances surrounding a plea" will inform the question of prejudice under *Strickland*, *see id.*, the undersigned begins by turning to the state court's factual findings relevant to Ellis's claim that Patterson provided constitutionally infirm counsel regarding his prison sentence. During the state-level habeas proceedings, the trial court reviewed Ellis's original and amended petitions (Exs. Z & AA), the prosecution's original and supplemental responses (Ex. BB & DD), and Ellis's affidavit testimony and reply brief (Exs. EE & FF), and the court further heard arguments from the parties as to the claims raised here (*see* Ex. CC at 1) (describing March 9, 2016 hearing); (*see also* Ex. LL at 5-6) (noting hearing date(s)). Having done so, the state court found that Ellis "changed his plea of his own accord,

without inducement of his attorney, and before his counsel could obtain a plea agreement." (Ex. GG at 1). The state court further found that Ellis "stated that what he did was wrong and disgusting" during sentencing, "disputed nothing said by the prosecutor or his attorney," and "of his own accord" sent letters to the victim and district attorney "explaining in detail his crimes and accepting responsibility." (*See id.* at 1-2). Additionally, although Ellis insisted otherwise, the court found that Patterson informed Ellis prior to his change of plea that he could be facing 105 years in prison[4] if convicted. (*See id.* at 2). And to that end, the court observed that Ellis "acknowledged [at sentencing] that he knew of the life-time exposure sought by [the] prosecution." (*See id.*).

The foregoing factual findings are entitled to a presumption of correctness, and Ellis has not set forth "clear and convincing evidence" to overcome this presumption. *See* 28 U.S.C. § 2254(e)(1). Nor does the evidence suggest that the state court plainly misapprehended the record presented there, *see Wiggins*, 539 U.S. at 528, such that "all '[r]easonable minds reviewing the record' would agree" that those findings were incorrect, *see Smith*, 904 F.3d at 880. The aforementioned state-court findings of fact, which the undersigned agrees with and adopts, support the conclusion that Ellis would not have gone to trial even without the allegedly deficient representation of counsel.

Other aspects of the factual record provide further support for this conclusion. At the outset of the case, the prosecution filed a criminal complaint describing M.W.'s allegations against Ellis in detail. (*See, e.g.*, Ex. BB att. A, at 2-4). At the November 2012 pretrial conference, Ellis acknowledged through counsel his understanding "that M.W. would be

---

[4] The undersigned notes that Respondents have consistently taken the position that Ellis's maximum possible sentence of imprisonment was for a term of 91.5 years, not 105 years. (*See, e.g.*, Ex. J at 2); (Ex. BB at 4). This difference is insignificant for purposes of assessing prejudice to Ellis, since both terms were substantially longer than the sentence Ellis actually received and either term would have likely exceeded Ellis's natural lifespan.

testifying to the acts that occurred" (*see, e.g.*, Ex. BB at 4), and the record reflects no disputes on his part concerning the physical evidence tying him to the crime (*see, e.g.*, Ex. BB att. B). At the same hearing, Ellis further admitted through counsel that a jury could have found him guilty based on the prosecution's case. (*See, e.g.*, Ex. BB at 4). And aside from Patterson's testimony concerning what he told Ellis about the sentence being sought by the prosecution, the record reflects Ellis's understanding that he faced prison time "for the rest of his life" (*see* Ex. GG at 2), consistent with his maximum exposure of as much as 105 years' imprisonment (*see, e.g.*, Doc. 28 at 8-9), and the record further reflects that the prosecution did in fact urge the court to impose the "maximum sentence" prior to Ellis's sentencing colloquy (*see, e.g.*, Ex. BB at 5).

On these facts, the undersigned reaches the following findings and conclusions. First, it is apparent from the record that the court adjudicated on the merits Ellis's ineffective-assistance claim concerning Patterson's allegedly deficient counsel regarding the effect of a guilty plea on his prison sentence (*see, e.g.*, Ex. GG), and Ellis has neither argued to the contrary nor presented any evidence to overcome the presumption to this effect, *see, e.g.*, *Richter*, 562 U.S. at 99. Second, there is no evidence in the record suggesting that Ellis would have received a more favorable sentence had he gone to trial; if anything, the record illustrates that when he pleaded guilty, Ellis received less than the minimum sentence sought by the prosecution and significantly less than his maximum exposure. *See, e.g.*, *Frye*, 566 U.S. at 148. Third, and relatedly, there is essentially no evidence to suggest that Ellis would have gone to trial but for Patterson's allegedly deficient advice. Ellis's "mere allegation" on this point standing alone is insufficient, finds no other support in the record, and indeed flies in the face of Ellis's own representations during the pretrial conference and at his sentencing. *See Miller*, 262 F.3d at 1072; *see also, e.g.*, *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong

presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").

As such, insofar as Ellis challenges his attorney's advice concerning his prison exposure if he pleaded guilty, Ellis has failed to show that he was prejudiced by this allegedly deficient counsel. His ineffective-assistance claim on that basis must fail.

## 2.   Counsel Regarding Supervised Parole Term

The same must be said of Ellis's ineffective-assistance claim concerning Patterson's alleged failure to advise him that he faced a mandatory supervised parole period of five years to life, rather than five to twenty years.[5] The state court appeared to address both the performance and prejudice prongs of this claim, finding that Patterson did in fact "misinform[]" Ellis about his possible supervised parole term but that this "mis-statement" did not amount to deficient performance and did not prejudice him (*see* Ex. GG at 2); accordingly, this claim was adjudicated on the merits and is subject to the deferential AEDPA standard. Further, the aforementioned factual findings—including but not limited to Ellis's acknowledgement of and failure to dispute the strength of the evidence against him (*see, e.g.*, Ex. BB at 4-5), his repeated acceptance of responsibility for his crimes (*see, e.g.*, Ex. GG at 1-2), and his recognition of "life-time exposure" for his crimes (*see id.* at 2)—fatally undermine Ellis's claim that he would have gone to trial if not for the erroneous advice regarding his parole term.

---

[5] To be clear, Ellis's claim on this point is premised entirely on his attorney's failure to advise him of the supervised parole consequences of pleading guilty, not on the state court's amended judgment imposing the longer parole period. Ellis does not appear to dispute, and New Mexico law confirms, that the longer supervised parole term was required due to his conviction on charges of second-degree CSP and second-degree CSCM. *See* N.M.S.A. § 31-21-10.1(a)(2). Moreover, Ellis does not appear to challenge the state court's authority to amend his judgment to impose the correct parole period (*see* Ex. B)—nor could he. *See, e.g.*, *State v. Acuna*, 705 P.2d 685, 686 (N.M. Ct. App. 1985) ("[A]n invalid sentence may be corrected by the imposition of a proper sentence, even though the defendant has begun to serve the original sentence, and even if the proper sentence is more onerous.") (internal citations omitted).

The undersigned finds instructive the analysis of the Honorable Karen B. Molzen, United States Magistrate Judge, in *Boulden v. Janecka*, No. 09-cv-770 BB/KBM, 2010 WL 11523666 (D.N.M. Sept. 3, 2010), *PFRD adopted*, 2010 WL 11523667 (D.N.M. Sept. 28, 2010). There, as here, the petitioner claimed that his plea was rendered involuntary because his attorney failed to correctly advise him about the parole term required under New Mexico law. *See id.* at *12. Looking "to the factual circumstances surrounding the plea," Judge Molzen cited several findings by the state court underlying its conclusion that the petitioner had not shown a reasonable likelihood that he would have gone to trial but for his attorney's advice:

> The trial judge . . . found that a guilty verdict was all but assured given the strength of the evidence against Petitioner. Based on his first-hand observation of Petitioner over several hearings, he concluded Petitioner's nervousness was indicative of not wanting to go to trial. He further found that, given the virtual certainty of a verdict of guilty, Petitioner would not have gambled a long but certain sentence that afforded him a chance to live outside of prison for a "coffin" sentence, if he had known that he would be on parole from five to twenty years after his release.

*Id.* at *12-13. Adopting these findings, which the petitioner had not rebutted by clear and convincing evidence, Judge Molzen concluded that the trial court did not unreasonably apply *Strickland* in finding that the petitioner was not prejudiced by his attorney's purported errors. *Id.*[6]

Judge Molzen's reasoning in *Boulden* compels the same conclusion here. As previously discussed, the record in this case (like the record in *Boulden*) includes strong evidence suggesting a substantial likelihood of a guilty verdict had Ellis proceeded to trial, including laboratory evidence tying him to the crime, M.W.'s potential testimony, and Ellis's own repeated admissions of guilt in letters to the district attorney and the victim. Additionally, as the state court found, Ellis was adamant to both his attorney and the court that he was pleading guilty "of

---

[6] Although the Tenth Circuit did not directly address the merits of the petitioner's claims on appeal, the court stated that it had "nothing to add to the comprehensive analysis set out by Magistrate Judge Molzen in her Reports and Recommendations." *Boulden v. Janecka*, 435 F. App'x 711, 712 (10th Cir. 2011) (unpublished) (denying certificate of appealability and dismissing appeal).

his own accord" and "straight up." (*See, e.g.*, Ex. GG). Perhaps most tellingly, the state court found that Ellis was aware prior to his change of plea that he was facing a maximum prison sentence of perhaps 100 or more years in light of his guilty plea, and Ellis told the court that he knew the prosecution wanted "to put him away for the rest of his life." (*See id.*). It would have been incredible for the state court to believe, based on Ellis's mere allegation at this late stage, that a defendant who pleaded guilty under these circumstances—knowing the strength of the prosecution's case against him, knowing of his own repeated acknowledgements of guilt, and knowing that he was potentially facing *a lifetime in prison* by so pleading—would have preferred to instead go to trial had he known that he might instead face *a lifetime on supervised parole* following the end of his prison term. *Cf. Boulden*, 2010 WL 11523666, at *13; *cf. also, e.g.*, *Yazzie v. United States*, No. 14-cv-894 JB/CG, 2015 WL 13651155, at *5 (D.N.M. July 22, 2015) (finding no prejudice under *Strickland* where evidentiary record, including petitioner's acknowledgement at sentencing that jury would have found him guilty, outweighed mere unsupported allegation that petitioner would have proceeded to trial), *PFRD adopted*, 2015 WL 7806975 (D.N.M. Oct. 31, 2015).

At the very least, the state court's ruling that Ellis would not have preferred to go to trial but for his attorney's advice on this point was not an unreasonable conclusion under the aforementioned facts. As a consequence, Ellis has not shown that he was prejudiced by Patterson's misstatements concerning his parole term, meaning that he is not entitled to habeas relief on this claim.

## B. DOUBLE JEOPARDY

The Fifth Amendment's guarantee against double jeopardy "protects against multiple punishments for the same offense." *Schiro v. Farley*, 510 U.S. 222, 229 (1994) (quotation

omitted). In the context of multiple punishments for the same underlying conduct in the same trial, "the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366 (1983). "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). As long as each provision "requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." *Iannelli v United States*, 420 U.S. 770, 785 n.17 (1975). In determining whether a defendant's conduct constituted a single offense or separate offenses under the Double Jeopardy Clause, federal courts "defer to the state court's interpretation of the relevant statutory provisions." *Lucero v. Kerby*, 133 F.3d 1299, 1316 (10th Cir. 1998).

1.   Ellis's Convictions for Aggravated Burglary and CSP

Ellis first argues that his punishment for both aggravated burglary (Count 7) and CSP (Counts 2 through 5) violates the Double Jeopardy Clause because they are "based on the same conduct." (*See* Doc. 1 at 17). Ellis does not state which of his four CSP convictions were based on the same conduct as his burglary charge. (*See id.*). Regardless, the state court explicitly rejected this claim, finding that the two crimes "were not unitary. The aggravated burglary occurred as Petitioner entered the apartment without authorization and with the intent to commit a felony therein. The various acts of sexual penetration then took place after the aggravated burglary." (Ex. GG). Since the state court plainly adjudicated this claim on the merits, its decision is subject to AEDPA deference. *See, e.g.*, *Richter*, 562 U.S. at 99.

Because Ellis's first double jeopardy claim is a "double-description" challenge—one concerning "violations of multiple statutes that may or may not be deemed the same offense for double jeopardy purposes"— the fulcrum question under New Mexico law is whether the legislature intended "to authorize multiple punishments for the same offense." *Swafford v. State*, 810 P.2d 1223, 1228 (N.M. 1991). The New Mexico Supreme Court has adopted a two-part test to discern legislative intent in double-description cases:

> First, the court must inquire as to whether the conduct underlying the offenses is unitary, *i.e.*, whether the same conduct violates both statutes. If the conduct is non-unitary, then multiple punishments would not violate the Double Jeopardy Clause. If the conduct is unitary, the court must then proceed to the second prong of the test, which asks whether the legislature intended multiple punishment for unitary conduct. Under the second prong, if the legislature expressly provides for multiple punishments, there is no double jeopardy violation and the inquiry ends. If, however, there is no clear expression of legislative intent, the court then applies the *Blockburger* test to the elements of each statutory provision. If the *Blockburger* test establishes that one statute is subsumed within the other, the inquiry is over and the statutes are the same for double jeopardy purposes—punishment cannot be had for both.

*Lucero*, 133 F.3d at 1316-17 (quoting *Swafford* 810 P.2d at 1233-34) (internal quotation marks and alterations omitted). As to the first prong of the *Swafford* test, "conduct is generally not unitary when there is 'an identifiable point at which one of the charged crimes ha[s] been completed and the other not yet committed.'" *State v. Montoya*, 384 P.3d 1114, 1119 (N.M. Ct. App. 2016) (quoting *State v. DeGraff*, 131 P.3d 61, 71 (N.M. 2006)).

Although Ellis's state habeas counsel correctly argued that aggravated burglary and CSP may be considered unitary under *some* circumstances (*see* Ex. AA at 18), the decision Ellis relied upon in making this argument has little relationship to the question presented here. In *Armendariz*, the New Mexico Court of Appeals found that a charge of aggravated burglary under an older version of N.M.S.A. § 30-16-4(C), which criminalized a burglary where the defendant "touched or applied force to [the victim] in a rude or angry manner while entering or leaving or

while inside," was unitary with conduct now criminalized under N.M.S.A. § 30-9-11(E)(3)—involving CSP perpetrated by the use of force upon the victim—because the defendant in that case used the same force to accomplish both offenses. *See State v. Armendariz*, 148 P.3d 798, 803 (N.M. Ct. App. 2006). Stated differently, *Armendariz* simply stands for the proposition that when *the same use of force* underlies both a conviction for aggravated burglary under § 30-16-4(C) and a conviction for CSP under § 30-9-11(E)(3), that conduct will be considered unitary. *See id.* By contrast, Ellis's aggravated burglary conviction arose not under N.M.S.A. § 30-16-4(C) as in *Armendariz*, but under N.M.S.A. § 30-16-4(A), which criminalizes unauthorized entry with felonious intent while "armed with a deadly weapon." (*See* Ex. B). Likewise, Ellis's CSP convictions arose not under N.M.S.A. § 30-9-11(E)(3) as in *Armendariz*, but under N.M.S.A. § 30-9-11(E)(6), concerning such conduct done while "armed with a deadly weapon." (*See id.*). Because *Armendariz* and the instant case concern wholly different statutory provisions, that decision's application here is limited at best.

Further, there are key factual distinctions in this case that render inapposite the New Mexico Court of Appeals' reasoning in *Armendariz*. Whereas the aggravated burglary and CSP in that case were completed at the same time—when the defendant jumped onto the victim, flipped her over, and penetrated her, *see* 148 P.3d at 800, 802—the state court found that the aggravated burglary in this case was finished *as soon as Ellis entered the apartment* without permission while armed. (*See* GG at 2). In other words, the state court found that this conduct was finalized before Ellis engaged in *any* conduct underlying any of his subsequent penetrations of M.W. *See, e.g.*, *Montoya*, 384 P.3d at 1119; *State v. Livernois*, 934 P.2d 1057, 1063 (N.M. 1997) (holding that aggravated burglary was not unitary with murder because defendant completed burglary "[a]t the moment that [he] gained access to the bowling alley" and "the

shooting occurred after"). And although Ellis's aggravated burglary and CSP convictions each required proof that he was "armed with a deadly weapon" during their commission, the facts alleged here show that Ellis *put down* his knife after committing the burglary, then later *picked it back up* before penetrating her unlawfully. (*See* Ex. BB att. A, at 3) (statement of victim to investigator). On these facts, the state court reasonably could—and apparently did—conclude that these two distinct periods in which Ellis was armed constituted non-unitary conduct, standing in stark contrast to the same use of force underlying the two convictions in *Armendariz*.

Under these circumstances, the undersigned cannot say that the state court applied federal law unreasonably in concluding that Ellis's aggravated burglary and CSP convictions addressed separate offenses and were therefore not violative of the Double Jeopardy Clause. Nor can the undersigned say that this decision was premised on an unreasonable determination of facts. Consequently, Ellis's first double jeopardy challenge is without merit.

2.   Ellis's Convictions for CSP and CSCM

Ellis also raises a double jeopardy challenge to his CSP and CSCM convictions. (*See* Doc. 1 at 17). The gravamen of Ellis's argument here, as in his state-court proceeding, is that he cannot receive separate punishments for these five convictions because all of them—the charge of CSP in the living room (fellatio, Count 2), the bedroom-based charges of CSP (digital penetration, cunnilingus, and intercourse in Counts 3, 4, and 5 respectively), and the sole charge of CSCM (Count 6)—were premised on a single course of conduct. (*See id.*); (Ex. AA at 19).

The undersigned first addresses the threshold question of whether the state court adjudicated this claim on the merits for AEDPA purposes. As Respondents concede (Doc. 28 at 11), the state court made no express findings concerning this claim when it denied Ellis's petition (*see* Ex. GG). Generally speaking, though, "[w]hen a state court rejects a federal claim without

expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits." *Johnson*, 568 U.S. at 301. Here, Ellis expressly raised and argued this double jeopardy claim in his habeas petition (Ex. AA at 18-21), and Respondents directly countered it (Ex. BB at 17-19). Given that the state court was fully apprised of this claim when it rejected Ellis's petition (*see* Ex. GG), AEDPA requires that the Court presume that the claim was adjudicated on the merits—notwithstanding the state court's failure to expressly address that claim—unless Ellis rebuts that presumption. *See Richter*, 562 U.S. at 99; *cf. Aycox*, 196 F.3d at 1177 (AEDPA deference owed even if state court's reasoning not expressly stated). However, Ellis has pointed to nothing in the record rebutting this presumption, even after Respondents directly raised the issue in their answer (*see* Doc. 28 at 11), despite being afforded an extended opportunity to do so (*see* Doc. 33). If anything, the record presented here—showing that Ellis did not raise the state court's purported omission in his subsequent certiorari petition (*see* Ex. HH) or in his petition before this Court (Doc. 1)—only confirms that Ellis himself "does not appear to have thought that there was an oversight." *See Johnson*, 568 U.S. at 306 (finding presumption not rebutted where petitioner "neither petitioned [state] court for rehearing nor argued in the subsequent state and federal proceedings that the state court had failed to adjudicate her [allegedly unadjudicated] claim on the merits"). The undersigned therefore concludes that the state court adjudicated this claim on the merits and that AEDPA deference applies.

Whereas Ellis's double jeopardy challenge to his aggravated burglary and CSP convictions was a double-description challenge, Ellis has styled this double jeopardy claim as a "unit of prosecution" challenge. (*See* Ex. AA at 18); (*see also* Doc. 1 at 17) (focusing on whether CSP and CSCM charges "arose from the same course of conduct"). "The relevant inquiry in [unit of prosecution] cases is whether the legislature intended punishment for the entire course of

conduct or for each discrete act." *See Swafford*, 810 P.2d at 1228 (citation omitted). In

determining the appropriate unit of prosecution with respect to CSP charges under N.M.S.A.

§ 30-9-11, "the number of penetrations is not dispositive of the number of violations of [the

statute]; rather, the key is whether each penetration is in some sense distinct under the evidence."

*State v. Pisio*, 889 P.2d 860, 868 (N.M. Ct. App. 1994). The New Mexico Supreme Court weighs

six factors "[i]n determining whether an act [of CSP] is distinct":

> (1) temporal proximity of penetrations (the greater the interval between acts the
> greater the likelihood of separate offenses); (2) location of the victim during each
> penetration (movement or repositioning of the victim between penetrations tends
> to show separate offenses); (3) existence of an intervening event; (4) sequencing of
> penetrations (serial penetrations of different orifices, as opposed to repeated
> penetrations of the same orifice, tend to establish separate offenses); (5) defendant's
> intent as evidenced by his conduct and utterances; and (6) number of victims . . . .

*Herron v. State*, 805 P.2d 624, 628 (N.M. 1991). As a general rule, these factors are considered

collectively, and no one factor is dispositive. *See id.* at 628-29.

Because Ellis's double jeopardy claim challenges five convictions, the undersigned

considers the underlying events in chronological order to determine whether each count may

have been reasonably deemed to address "distinct" conduct. As will be shown, each conviction

did in fact pertain to conduct that could have reasonably been considered distinct under New

Mexico law, meaning that the Double Jeopardy Clause has not been implicated.

*Count 2 (CSP – fellatio – living room) and Count 3 (CSP – digital – bedroom).*[7] The state

court's rejection of Ellis's habeas claim as to these convictions was not an unreasonable

application of clearly federal established law and was not based on an unreasonable

---

[7] Ellis has at times suggested that his double jeopardy challenge only concerns the sexual acts occurring in the
bedroom and that he is not challenging the imposition of a separate CSP conviction in Count 2 for conduct in the
living room. (*See* Ex. HH at 8) ("Petitioner should have only been charged with 2 counts of criminal sexual
penetration."). Because Ellis's federal petition is not clear on this point (*see* Doc. 1 at 17), the undersigned addresses
Count 2 out of an abundance of caution.

determination of the facts. Even when reviewing pre-AEDPA convictions on a *de novo* standard, the Tenth Circuit has applied the *Herron* factors to find distinct conduct towards the same victim, even in the same location and in short temporal proximity, where the assailant penetrated the same orifice with different parts of his body and where at least one party's movement constituted an intervening act. *See Lucero*, 133 F.3d at 1322 (finding distinct penetrations where, after being penetrated with finger, victim hit ground and attempted to crawl away before being penetrated again with assailant's penis while on her stomach); *id.* (finding distinct penetrations where assailant penetrated second victim with finger as she was standing, then ordered her to lie down, then pushed her to the ground, and then penetrated her with his penis); *see also Bernal v. Lytle*, 125 F.3d 861, 1997 WL 622774, at *3-4 (10th Cir. 1997) (unpublished table decision) (holding that assailant's brief release of victim between two penetrations rendered conduct distinct). In a similar vein, the evidentiary record here showed that the penetrations at issue occurred about ten minutes apart, involved different parts of Ellis's body penetrating different parts of M.W.'s body in different rooms, and were separated by several intervening events (*e.g.*, Ellis striking M.W., dragging her into a different room, and positioning her in different manner). (*See* Ex. BB att. A, at 3). The state court's apparent conclusion that these penetrations were distinct, and that the corresponding convictions addressed separate offenses, was at the very least a reasonable one.

*Count 3 (CSP – digital – bedroom) and Count 4 (CSP – cunnilingus – bedroom)*. While a closer call, the state court's apparent ruling with respect to these convictions was also a reasonable application of federal law and did not involve an unreasonable determination of facts. From the record before the undersigned, it is not clear how much time passed between the penetrations addressed by these counts, which both occurred in the same room. But again, the fact that two penetrations occur in the same location, and potentially in short temporal proximity,

is not dispositive. *See, e.g.*, *Lucero*, 133 F.3d at 1322 (describing distinct penetrations occurring with little temporal separation in the same room). Because these two penetrations involved different parts of Ellis's body (finger and tongue), the state court could have reasonably found that the fourth *Herron* factor weighed against a finding of a single course of conduct. *See, e.g.*, *id.* (finger and penis). The factual record also reflects that the first penetration occurred when Ellis "got on top" of M.W. and held down her chest with his arm while inserting a finger into her vagina, while the second penetration involved Ellis inserting his tongue into her vagina. (*See* Ex. BB att. A, at 3). Because Ellis likely could not have accomplished both penetrations without repositioning either himself or M.W., the state court reasonably could have found that such a repositioning occurred, which in turn would have sufficed as an intervening event under the third *Herron* factor. *See Lucero*, 133 F.3d at 1322; *see also Martinez v. Tafoya*, No. 99-cv-672 LH/LCS, 2000 WL 36739634, at *3 (D.N.M. Aug. 16, 2000) (finding as reasonable state court's use of *Herron* factors to reject double jeopardy challenge where record reflected, *inter alia*, assailant repositioned victim in between digital and penile penetrations). "Although some of the other factors may weigh towards a single offense (*i.e.*, one victim, one orifice penetrated, and total time of the attack . . .), it is not the province of this Court to re-weigh the evidence and second guess the New Mexico courts" under AEDPA's deferential standards. *Martinez*, 2000 WL 36739634, at *3. Therefore, the state court could have reasonably concluded that these two penetrations were distinct under the *Herron* analysis, and Ellis has not shown otherwise.

   *Count 4 (CSP – cunnilingus – bedroom) and Count 5 (CSP – penile – bedroom).* Once again, the state court's apparent rejection of Ellis's double jeopardy challenge concerning these convictions was not unreasonable. Although occurring in the same room, the penetrations addressed by these charges involved different parts of Ellis's body (tongue and penis) and

necessarily required either Ellis or his victim to be repositioned. (*See* Ex. BB att. A, at 3).

Additionally, Ellis's statement to M.W. between the two penetrations—"you're gonna like the

next part" (*see id.*)—sufficed as evidence that Ellis intended for them to be seen as distinct.

Accordingly, the state court could have reasonably concluded that the third, fourth, and fifth

*Herron* factors—concerning intervening events, sequencing of acts, and utterances evidencing

the defendant's intent, *see* 805 P.2d at 628—weighed in favor of finding that these penetrations

were distinct. Under AEDPA deference, that is enough to conclude that these convictions

concerned separate offenses for double jeopardy purposes.

   *Counts 2-5 (CSP) and Count 6 (CSCM).* Finally, Ellis's challenge to these convictions

under the Double Jeopardy Clause fails twice over. As an initial matter, Ellis has raised this

challenge on a "unit of prosecution" theory (*see* Ex. AA at 18); (*see also* Doc. 1 at 17) that is

simply inapplicable to claims of double jeopardy involving convictions under different statutes.

*See Swafford*, 810 P.2d at 1228, 1233 (defining such claims as "double-description cases" and

describing applicable standard). Moreover, even had Ellis raised a proper double-description

challenge arguing that his CSP and CSCM convictions concerned unitary conduct, the state

court's rejection of that claim would still have been proper given that the latter count was not

premised on any penetration. (*See* Ex. D at 2) (describing CSCM charge as involving contact

with victim's breast). In either event, Ellis's double jeopardy challenge to these convictions is

not tenable, and the state court's conclusion to that effect was not unreasonable.

   On this record, the undersigned concludes that the state court adjudicated Ellis's double

jeopardy challenge to his CSP and CSCM convictions on the merits and that the court's rejection

of that claim was not premised on an unreasonable application of law or an unreasonable

determination of facts. Habeas relief on this claim is unavailable.

## III.  CONCLUSION

For the reasons stated above, Ellis has not demonstrated that the state court reached a decision that was contrary to federal law, unreasonably applied federal law, or made an unreasonable determination of the facts in upholding his convictions. Ellis therefore is not entitled to relief under 28 U.S.C. § 2254.

**IT IS, THEREFORE, RECOMMENDED** that Ellis's petition for a writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1) be **DENIED**.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN (14) DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension of time must be filed in writing no later than seven (7) days from the date of this filing. A party must file any objections with the Clerk of the District Court within the fourteen (14) day period, together with any period for which an order is entered granting an extension of time, if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**